UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SCARSDALE CENTRAL SERVICE INC.,  :
:
               Plaintiff,  :        13-cv-8730 (NSR)
  -against-  :
:      MEMORANDUM OPINION AND
CUMBERLAND FARMS, INC. and GULF OIL  :           ORDER ON
LIMITED PARTNERSHIP,  :         RECONSIDERATION
:
               Defendants.  :
-----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Scarsdale Central Service Inc. ("Plaintiff") moves for reconsideration and/or reargument of the Court's Memorandum and Order, filed March 7, 2014, and entered on the docket March 10, 2014 ("the Order," *see* Doc. 40), granting Defendants Gulf Oil Limited Partnership ("Gulf Oil") and Cumberland Farms, Inc.'s ("Cumberland") (collectively "Defendants") motion for a preliminary injunction. Plaintiff has since vacated the gasoline station it operated at 880 Central Park Avenue in Scarsdale, New York ("Premises"). In the Order, the Court found that Defendants were likely to succeed on the merits on their counterclaims alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), and seeking a declaration that Defendants' actions satisfied the nonrenewal requirements of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2802, 2804. Knowledge of the facts, procedural history, and terms of the preliminary injunction granted by the Order is presumed.

       In its motion for reconsideration and/or reargument, Plaintiff asserts the Court overlooked factual matters and controlling case law which might reasonably be expected to have led to a

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/24/2014

different ruling had they been considered. Plaintiff also asserts that the Court disregarded the bond requirement of Federal Rule of Civil Procedure 65(c), and that Plaintiff is entitled to a stay of the preliminary injunction pending appeal. In opposition, Defendants assert that the instant motion is untimely, that Plaintiff is barred from making new arguments it could have raised when the underlying motion was initially briefed and argued, that Plaintiff's substantive arguments are meritless, that no bond was required in the instant case, and that Plaintiff is not entitled to a stay pending appeal because it has not filed a notice of appeal. For the following reasons, Plaintiff's motion for reconsideration is granted in part and denied in part.

## I. STANDARD OF REVIEW

Motions for reconsideration are governed by Local Civil Rule 6.3, which requires that the moving party serve "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Civ. R. 6.3; *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 311–12 (S.D.N.Y. 2008). Motions for reconsideration are "addressed to the sound discretion of the district court[.]" *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990); *cf. Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500–01 (S.D.N.Y. 2008) ("Whether to grant or deny a motion for reconsideration or reargument is in the sound discretion of a district court judge.") (internal quotation marks and citation omitted). The standard for granting a motion for reconsideration is strict. *Targum v. Citrin Cooperman & Company, LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6188339, at *1 (S.D.N.Y. Nov. 25, 2013). "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked,'" *In re Optimal U.S. Litig.*, 886 F. Supp. 2d at 311–12 (quoting *Patterson v. United States*, No. 04 Civ. 3170, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)); *accord*

*Analytical Surveys*, 684 F.3d at 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)), "and that 'might reasonably be expected to alter the conclusion reached by the court,'" *In re Optimal U.S. Litig.*, 886 F. Supp. 2d at 312 (quoting *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008)); *accord Shrader*, 70 F.3d at 257.  Alternatively, a court may grant a motion for reconsideration to "'correct a clear error or prevent manifest injustice.'" *In re Optimal U.S. Litig.*, 886 F. Supp. 2d at 312 (quoting *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2005)).

"Controlling decisions include decisions from [the United States Supreme Court and] the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380–81 (S.D.N.Y. 2009) (citing *Ades v. Deloitte & Touche*, 843 F. Supp. 888, 892 (S.D.N.Y. 1994) (holding that district court decisions and decisions from other circuits are not controlling under predecessor to Local Civil Rule 6.3)); *accord Langsam v. Vallarta Gardens*, No. 08 Civ. 2222 (LAP), 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009); *Alzamora v. Vill. of Chester*, 534 F. Supp. 2d 436, 439 (S.D.N.Y. 2008); *see also Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, No. 08-CV-10518 (LAP), 2011 WL 1347001, at *1 (S.D.N.Y. Apr. 4, 2011); *Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06 Civ. 6468 (KMW) (MHD), 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06 Civ. 2692 (KMW) (RLE), 2009 WL 1514310, at *3 n.9 (S.D.N.Y. May 29, 2009); *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 118 (S.D.N.Y. 2007).

"A motion for reconsideration is 'not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion.'" *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 95 (S.D.N.Y. 2012)

3

(quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)); *see also Analytical Surveys*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (holding that motion for reconsideration "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a 'second bite at the apple'"); *Koehler v. Bank of Bermuda, Ltd.*, No. M18–302 (CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (citing *Kunica v. St. Jean Fin., Inc.*, 63 F. Supp. 2d 342, 346 (S.D.N.Y. 1999)) (stating that on motion for reconsideration, movant "cannot assert new arguments or claims which were not before the court on the original motion"); *SEC v. Ashbury Capital Partners, LP*, No. 00 CV 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (stating that "parties may not present new facts or theories" on motion for reconsideration).  Reconsideration of a court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, Nos. 05 Civ. 3430, 05 Civ. 4759, & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. May 19, 2006).

**II. TIMELINESS**

Defendants contend that the instant motion was untimely filed under Local Civil Rule 6.3, which states in pertinent part:

> Unless otherwise provided by the Court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion . . . .

The Order was filed March 7, 2014, and entered on the docket by the Clerk's office on March 10, 2014.  Plaintiff electronically filed the instant motion on March 25, 2014, thus effecting

service on Defendants fifteen days after entry of the Order.  Plaintiff did not seek an extension of the fourteen-day deadline.  Defendants assert that because Plaintiff filed and served the instant motion eighteen days after the Order was filed and fifteen days after it was entered, the motion should be denied.  *See Luv n' Care, Ltd. v. Regent Baby Prods. Corp.*, No. 10 Civ. 9492, 2014 U.S. Dist. LEXIS 8441, at *1–2 (S.D.N.Y. Jan. 23, 2014) (denying as untimely motion for reconsideration filed fifteen days after initial order where movant did not seek extension of deadline from court); *see also Intellectual Prop. Watch v. U.S. Trade Representative*, No. 13 Civ. 8955 (ER), 2014 U.S. Dist. LEXIS 12958, at *2–3 (S.D.N.Y. Jan. 31, 2014) (denying as untimely motion for reconsideration filed twenty-three days after entry of initial order where movant did not seek extension of deadline from court); *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383 (LAP), 2014 U.S. Dist. LEXIS 18133, at *3 (S.D.N.Y. Jan. 24, 2014) (denying as untimely motion for reconsideration of two motions entered three and a half months and over three years, respectively, before motion for reconsideration filed).  Adhering to the strict confines of Local Civil Rule 6.3, Plaintiff's motion for reconsideration must be deemed untimely.

### III. INAPPROPRIATENESS OF ARGUMENTS

Defendants contend that Plaintiff's assertions for why the Court overlooked controlling decisions or data amount to new arguments which Plaintiff could have but failed to make in opposing Defendants' initial application for the preliminary injunction.  Thus, Plaintiff's instant motion should be denied.  *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 95 (S.D.N.Y. 2012). Specifically, Defendants contend Plaintiff's assertion that the contract offered by Defendants on August 27, 2013—for which Plaintiff, by letter on October 11, 2013, indicated it would exercise its right of first refusal—did not comply with the PMPA because Defendants' offer required the

5

removal of underground storage tanks, fuel pumps, and other property associated with pumping gasoline as a condition of the sale is newly raised and not properly before the Court. Accordingly, Defendants contend that Plaintiff asserts for the first time on reconsideration that the right-of-first-refusal provision, 15 U.S.C. § 2802(b)(3)(D)(iii)(II) ("Subclause II"), was in fact inapplicable, and that Defendants were instead required but failed to make a "bona fide" offer to sell the station, 15 U.S.C. § 2802(b)(3)(D)(iii)(I) ("Subclause I").[1] Defendants additionally contend that Plaintiff's assertion that the $1.3 million sales price was inflated to account for the removal of the underground storage tanks and related equipment is newly raised and not properly before the Court.[2]

To the extent Plaintiff previously argued in opposition to the preliminary injunction motion that the sales contract Defendants offered Plaintiff was insufficient to satisfy the "good

---

[1] The statute states in pertinent part:
   (3) For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:
   . . .
   (D) . . . in the case of any franchise entered into or renewed on or after [June 19, 1978] (the term of which was 3 years or longer, or with respect to which the franchisee was offered a term of 3 years or longer), a determination made by the franchisor *in good faith* and in the normal course of business, if—
      (i) such determination is—
      . . .
         (III) to sell [the] premise, . . .
      . . .
      (ii) . . . and
      (iii) in the case of leased marketing premises such franchisor, during the 90-day period after notification was given pursuant to [15 U.S.C. § 2804], either—
         (I) made a *bona fide offer* to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or
         (II) if applicable, offered the franchisee a *right of first refusal* of at least 45-days duration of an offer, made by another, to purchase such franchisor's interest in such premises.
15 U.S.C. § 2802(b)(3) (emphasis added).

[2] The Amended Complaint alleges that the provisions in the contract with 880 Central Park Avenue LLC ("880 CPA") requiring a down payment of $750,000 and requiring Cumberland to remove the underground storage tanks which Cumberland had just installed are evidence that the contract with 880 CPA was "not an arms-length transaction" but was instead designed "to frustrate the Plaintiff's ability to exercise its right of first refusal." (Amended Compl. ¶¶ 28–30.)

faith" test of 15 U.S.C. § 2802(b)(3)(D), Plaintiff's arguments centered entirely around Subclause II's right of first refusal requirement. More specifically, Plaintiff argued that an amended contract offered on October 28, 2013, did not properly provide a right of first refusal because it contained materially different terms from those offered to third-party purchaser 880 Central Park Avenue LLC ("880 CPA"), those terms being (a) a different financing provision and (b) an additional Mutual Termination agreement which would terminate the franchise relationship between Plaintiff and Gulf Oil. (Pl.'s Br. in Opp'n to Prelim. Inj. Mot. 2, 6.)[3] Thus, Plaintiff's assertion that Defendants did not provide it with a bona fide offer to purchase the Premises under Subclause I is an entirely new theory which Plaintiff failed to advance in opposition to the underlying motion. *Analytical Surveys*, 684 F.3d at 52; *WestLB AG*, 912 F. Supp. 2d at 95. Previously, Plaintiff relied on *Greco v. Mobil Oil Corp.*, 597 F. Supp. 468 (N.D. Ill. 1984), in opposing the underlying motion on the sole basis that strict compliance with the notice provision in 15 U.S.C. § 2804 was required. Plaintiff's reliance on *Greco* in support of its contention that Defendants failed to make a bona fide offer pursuant to Subclause I argument could have been advanced initially but was not.

To the extent Plaintiff previously argued that the purchase price was inflated, it merely asserted that the 2010 appraisal value of $800,000 was the fair market value of the property. (Pl.'s Br. in Opp'n to Prelim. Inj. Mot. 2.) Plaintiff also claimed on October 11, 2013, that 880 CPA's offer was inflated because it was "paying more for the right to extinguish [Plaintiff]'s businesses and increase [former defendant Syed] Kirmani's market share . . . ." (*Id.* Ex. C, at 3.) Thus, Plaintiff's assertion that the purchase price was inflated because the 880 CPA purchase

---

[3] Based on the logic of these previous arguments, it seems if Defendants had deleted the contract provision requiring them to remove the underground tanks and related equipment, Plaintiff would have argued that its removal also made the terms materially different such that the offered contract did not provide Plaintiff a right of first refusal.

price included the cost to Cumberland to remove the gasoline storage tanks and equipment is similarly a new theory which Plaintiff could have but failed to advance in opposition to Defendants' initial preliminary injunction motion.  *WestLB AG*, 912 F. Supp. 2d at 95.

Accordingly, the Court denies Plaintiff's motion for reconsideration because Plaintiff fails to demonstrate that the Court overlooked pertinent matters or data which Plaintiff brought to the Court's attention and which would have altered the conclusion previously reached.

## IV. NO CONTROLLING LAW CITED

In support of its newly asserted contentions, Plaintiff relies on an Eighth Circuit decision which held "as a matter of law that a bona fide offer to sell leased marketing premises under the PMPA must include the gasoline tanks, storage tanks, dispensers, and other equipment." *Roberts v. Amoco Oil Co.*, 740 F.2d 602, 607 (8th Cir. 1984).  In *Roberts*, a petroleum franchisor informed its tenant-franchisee that the franchise would not be renewed because it decided to sell the premises.  *Id.* at 603.  The franchisor made an offer to sell the premises that "excluded the gasoline pumps, dispensers, storage tanks, and piping and other equipment from the sale."  *Id.* at 604 (internal quotation marks omitted).  A few weeks later, the franchisee advised the franchisor that he would vacate the premises before the end of the franchise term.  *Id.*  The franchisor then terminated the franchise based on the franchisee's voluntary surrender of the station.  *Id.*  In the subsequent lawsuit, the franchisee asserted that he was not given a bona fide offer under Subclause I because the gas tanks and pumps were excluded from the sale.  *Id.* at 605.  In reversing the district court's grant of summary judgment to the franchisor, the Eighth Circuit agreed that no bona fide offer was made.  *Id.* at 607.

Plaintiff also relies on a case from the Northern District of Illinois which found that under either Subclause I or Subclause II a franchisor must present a franchisee with an offer to buy gas

station premises which includes the franchisor's personal property and gasoline equipment on site. *Greco v. Mobil Oil Corp.*, 597 F. Supp. 468, 472–73 (N.D. Ill. 1984). In *Greco*, the franchisor contracted with a third party to sell the premises of a gas station operated by its tenant-franchisee. *Id.* at 470. The franchisor then gave the franchisee a right of first refusal to purchase the property on the same terms as the third party's contract, which excluded the franchisor's personal property and gasoline station equipment. *Id.* In granting the franchisee's motion for a preliminary injunction maintaining the status quo of the franchise relationship, the *Greco* court held that the proposed sale must include the franchisor's personal property to constitute a sale of the "franchisor's interest." *Id.* at 473. The fact that there was a third party purchaser, unlike in *Roberts*, was immaterial to the *Greco* court. *Id.*

Plaintiff similarly relies on a decision from the Eastern District of New York involving a third-party contract to purchase the property that did not include underground storage tanks or above-ground equipment. *Atl. Ave. Oil & Gas, Ltd. v. Texaco Ref. & Mktg., Inc.*, 699 F. Supp. 27, 30–32 (E.D.N.Y. 1988). In *Atlantic Avenue Oil & Gas*, the franchisor contracted to sell the premises to another petroleum company and agreed to remove its underground tanks and above-ground fuel dispensing equipment. *Id.* at 28. The franchisor offered the franchisee a right of first refusal on equal terms as the third-party contract, and the franchisee counteroffered to include all the equipment and pay a lower price. *Id.* The franchisor rejected the counteroffer but verbally agreed to include the above-ground equipment at the same price. *Id.* at 28–29. The court held that the franchisor complied with the PMPA by offering to sell the premises without the underground tanks because the particular steel tanks in question posed an unsafe environmental threat. *Id.* at 29–31. However, the franchisor violated the PMPA because the above-ground pumps were not included in the third-party sales contract. *Id.* at 31. The court

9

held that there was "simply no third-party offer to buy the above-ground equipment of which [the franchisor] c[ould] give [the franchisee] a right of first refusal." *Id.*

As persuasive as the above authorities may be, they are not, as Plaintiff suggests, "controlling" decisions in this district. *Women's Integrated Network*, 2011 WL 1347001, at *1; *Cobalt Multifamily Investors I*, 2009 WL 4408207, at *2; *Heffernan*, 655 F. Supp. 2d at 380–81; *Langsam*, 2009 WL 2252612, at *2; *Analytical Surveys, Inc.*, 2009 WL 1514310, at *3 n.9; *Alzamora*, 534 F. Supp. 2d at 439; *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. at 118; *Ades*, 843 F. Supp. at 892. Nor do they remedy Plaintiff's utter failure to initially argue their applicability either in its papers opposing the underlying motion for preliminary injunction or at the hearing. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Accordingly, since Plaintiff fails to set forth controlling decisions which the Court overlooked in determining that Defendants demonstrated a likelihood of success on the merits of their PMPA counterclaim, Plaintiff's motion for reconsideration must be denied.

## V. BOND REQUIREMENT

Finally, Plaintiff asserts that the Court erred by not requiring Defendants to post a security bond. Under the Federal Rules of Civil Procedure, a district court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c). A district court has "wide discretion to set the amount of a bond, or even to dispense with the bond requirement where there has been no proof of likelihood of harm, or where the injunctive order was issued to aid and preserve the court's jurisdiction over the subject matter involved." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (internal quotation marks and citation omitted); *accord XL Specialty Ins. Co. v. Level Global*

*Investors, L.P.*, 874 F. Supp. 2d 263, 291 (S.D.N.Y. 2012).  If a court decides no bond is necessary, it must "make this determination before it enter[s] the preliminary injunction." *Corning, Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004).

In its initial opposition to Defendants' application for a preliminary injunction, Plaintiff did not address the need for a bond.  (*See generally* Pl.'s Br. in Opp'n to Prelim. Inj. Mot.)  Defendants note that at the preliminary injunction hearing, when the Court inquired as to whether an undertaking was required, Plaintiff's counsel did not contend it was required and Defendants' counsel asserted that none was required under the circumstances.  Defendants, however, fail to include a copy of the hearing transcript showing the above discussion on the record.  Furthermore, following the hearing, the Court reserved judgment on Defendants' application for a preliminary injunction.  (*See* Docket, March 3, 2014 Minute Entry.)  Contrary to Defendants' contention, the Court did not make a finding that a bond was unnecessary.

On reconsideration, Defendants assert Plaintiff has not provided any evidence that it would be harmed if a bond is not posted.  (Defs.' Br. in Opp'n to Mot. for Recons. 9.)  They also assert that a bond is inappropriate because Plaintiff does not identify the amount of a proposed bond or "a rational basis for the amount."  (*Id.* (quoting *Xiotech Corp. v. Express Data Prods. Corp.*, No. 6:13-CV-861 (MAD/TWD), 2013 WL 7758430, at *7 (N.D.N.Y. Aug. 14, 2013))); *see also Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195 (JGK), 2008 WL 4778239, at *21 (S.D.N.Y. Oct. 31, 2008) (citing *Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976)) (holding plaintiff was entitled to preliminary injunction without posting bond because defendant did not make request for bond).  Defendants assert further that because Plaintiff is "highly unlikely to prevail" on its claims, the situation "militates against the posting of *any* bond."  *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 627 (S.D.N.Y. 2010).

In the Order, though finding that the balance of hardships weighed in Defendants' favor, the Court found that Plaintiff would "undoubtedly suffer harm if the injunction [were] granted" due to Plaintiff's substantial investments of time and money in operating its gas station. (Order 14.)  Thus, Defendants' assertion that Plaintiff failed to proffer proof of harm is unavailing.  *See Doctor's Assocs.*, 107 F.3d at 136.  As to the purported requirement that a party opposing a preliminary injunction must request the posting of a bond, *see Clarkson Co.*, 544 F.2d at 632, the Second Circuit has noted that such a requirement conflicts with its own mandate that a court affirmatively determine no security is necessary before entering a preliminary injunction, *see Eyewonder, Inc. v. Abraham*, 293 F. App'x 818, 821 (2d Cir. 2008) (citing *Corning*, 365 F.3d at 158) (declining to resolve the issue).  Additionally, even if the Court determines that Plaintiff is unlikely to prevail, this factor merely "militates against" Defendants posting a bond.  *Rex Med.*, 754 F. Supp. 2d at 627.  Because the Court did not make an explicit finding that a bond was unnecessary under the circumstances as required, *Corning*, 365 F.3d at 158, reconsideration of the Order must be granted as to whether a bond is necessary under the circumstances, *see In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 312 (S.D.N.Y. 2008) (noting propriety of granting reconsideration to correct clear error).  Defendants assert that should the Court determine a bond is appropriate, they are "willing to post a bond."  (Defs.' Br. in Opp'n to Mot. for Recons. 10.)  Accordingly, because the Court previously determined Plaintiff would suffer some harm to its business if the preliminary injunction were granted, the Court finds that a security bond is required in the amount of $150,000.00.

## VI. CONCLUSION

Plaintiff's motion seeking reconsideration of the Order granting Defendants a preliminary injunction is GRANTED, and upon reconsideration it is hereby ORDERED that Defendants must post a bond in the amount of $150,000.00 no later than 7 days from the date of this order. As Plaintiff has not filed a notice of appeal, Plaintiff's application seeking a stay of the injunction pending appeal under Rule 62(c) is DENIED. The Clerk of Court is requested to terminate this motion (Doc. 58).

Dated: June 24, 2014
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge